```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/19/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
MARY E. SAMPSON,                      :
                                      :
                    Plaintiff,        :
         v.                           :   07 Civ. 2836 (BSJ)(RLE)
                                      :   **Memorandum & Order**
                                      :
CITY OF NEW YORK, ET AL.              :
                                      :
                    Defendants.       :
                                      :
-------------------------------------X

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On March 5, 2007 pro se Plaintiff Mary E. Sampson ("Plaintiff") filed suit against Defendants the City of New York, New York City Department of Health and Mental Hygiene ("DOHMH"), New York City Department of Citywide Administrative Services ("DCAS"), Kathleen Nolan, Andrea Batts (collectively "City Defendants"), Union District Council #37, New York City Department of Health, and New York City Office of General Counsel for Health alleging claims arising out of Defendants' termination of Plaintiff as a provisional Early Childhood Education Consultant ("ECEC") with the DOHMH Bureau of Day Care. Plaintiff withdrew all claims against the New York City Department of Health and New York City Office of General Counsel for Health in her Amended Complaint filed on October 11, 2007. The Court dismissed all claims against Union District Council #37 on March 25, 2009. Before the Court is Defendants' Motion

1

for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure regarding the remaining claims against the City Defendants. For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND[1]

In or around February 2005, plaintiff began working as a provisional Early Childhood Education Consultant with DOHMH's Bureau of Day Care. (Movant's Rule 56.1 Stmt. ¶ 1.) As an ECEC, plaintiff was responsible for monitoring and making recommendations concerning the licensing of infant and group day care services, group family day care homes, and compiling data to support issuance or denial of permits. Plaintiff was also responsible for investigating complaints about the operation of day care centers, issuing notices of violations of the Health Code or state regulations as well as preparing and submitting statistical reports for the DOHMH computer systems. (Movant's

---

[1] The facts stated here are drawn from Defendants' Local Rule 56.1 statement and from Plaintiff's submissions. Under Local Civil Rule 56.1(c), "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted." See also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). In this case, Plaintiff has responded to some, but not all, of Defendants' assertions. Where Plaintiff has not offered any facts to controvert those asserted in Defendants' Rule 56.1 statement, the Court accepts the facts in Defendants' Rule 56.1 statement as true. Cf. Duran v. Cushman & Wakefield Inc., No. 06 Civ. 14411, 2007 WL 2667128, at *1 n.2 (S.D.N.Y. Sept. 10, 2007) (finding that pro se plaintiff's "failure to respond to or contest the facts set forth by defendant in its Rule 56.1 statement constitutes an admission of those facts").

Rule 56.1 Stmt. ¶ 4.) Plaintiff is an African-American woman who was 56 years old when her employment began. (Compl. ¶ 7.)

Beginning in early 2005, DOHMH instituted new protocols for ECEC's assigned to field inspections. ECEC's were required to prepare and submit their list of inspection sites for each of their three field inspection days in the coming week to aid supervisors in planning, accountability, and communication. (Movant's Rule 56.1 Stmt. ¶ 7.) ECEC's were also required to enter inspection reports into the State-developed computer system and to mail follow-up letters to providers and applicants within 14 days of each visit. (Movant's Rule 56.1 Stmt. ¶ 8.)

Following her initial job training, Plaintiff and another ECEC, Hallie Light, were transferred to the DOHMH Manhattan Office to work under the supervision of Andrea Batts, a senior ECEC. (Movant's Rule 56.1 Stmt. ¶ 9.)

On or about October 19, 2005, Andrea Batts sent Plaintiff a memorandum reminding Plaintiff to enter inspection reports and schedules into the computer system and identified a number of other follow-up activities required by Plaintiff's role as an ECEC. (Movant's Rule 56.1 Stmt. ¶ 13-14.) On December 19, 2005, Batts sent Plaintiff another memorandum instructing Plaintiff to update inspection reports and schedules in the computer system. (Movant's Rule 56.1 Stmt. ¶ 15.) On January 17, 2006, January 23, 2006, and February 2, 2006, Batts issued

3

three additional memorandums to Plaintiff concerning Plaintiff's work performance. (Movant's Rule 56.1 Stmt. ¶ 18.)

On or about February 21, 2006, Plaintiff was terminated from her position as a provisional ECEC with DOHMH. (Movant's Rule 56.1 Stmt. ¶ 20.)

On or about March 22, 2006, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("SDHR"). (Movant's Rule 56.1 Stmt. ¶ 21.) The SDHR issued a no probable cause determination, dismissing Plaintiff's complaint. (Movant's Rule 56.1 Stmt. ¶ 23.) On or about December 19, 2006, the Equal Employment Opportunity Commission ("EEOC") adopted the findings of the SDHR and issued Plaintiff a right to sue letter. (Movant's Rule 56.1 Stmt. ¶ 24.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.

1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). Because Plaintiff brings this action pro se, the Court must construe her papers liberally and "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted). However, Plaintiff may not "rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that [her] version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999).

## DISCUSSION

In her Complaint, Plaintiff asserts that Defendants terminated Plaintiff's employment with the DOHMH based on: (1) racial discrimination in violation of Title VII and (2) age discrimination in violation of the ADEA. (See Compl. 1.) Plaintiff also asserts that she was subjected to a hostile work environment in violation of Title VII and the ADEA. (See Compl. 3.) Finally, Plaintiff asserts claims for racial and age discrimination under the New York State and City Human Rights Laws. (See Compl. 1.) The Court finds all of Plaintiff's claims to be without merit and thus GRANTS summary judgment in favor of Defendants.

### I. Plaintiff's Federal Law Claims

A plaintiff seeking to make out a claim for discrimination under Title VII or the ADEA must first establish a prima facie case of discrimination. Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001). In order to meet this burden, the plaintiff must show that: (1) she belonged to a protected class or was in the protected age group; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). "Once a plaintiff has established a prima facie case, the burden

shifts to the defendant . . . to offer a legitimate, non-discriminatory rationale for its actions." Id. at 138. Once the defendant has proffered its nondiscriminatory reason, "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). To show pretext, "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Id. (internal quotations omitted).

In the instant case, Defendants argue that Plaintiff "cannot demonstrate that her termination occurred under circumstances giv[ing] rise to an inference of discrimination." (Def. Mem. 1.) The Court agrees.

### A. Racial Discrimination

Plaintiff alleges that Defendants discriminated against her on the basis of race in violation of Title VII during the course of her employment, eventually leading to her termination. Specifically, Plaintiff compares her experiences with that of Hallie Light, a Caucasian coworker. (Pl. R. Mem. 2)("What else can these intolerable acts [be] associated with except racism?

7

Because my counter partner Hallie Light did not endure. . . the overburden or overkill work load atmosphere. . .").

Plaintiff testified regarding a number of instances that she alleges demonstrate discrimination within the workplace. Plaintiff testified that Andrea Batts gave more work assignments to Plaintiff than to Hallie Light, above and beyond Plaintiff's normal work duties. (Sampson Decl. Ex. E ("Pl. Dep.") 38:14-25, 46:20-22, 103:9-16.) Plaintiff also testified that when her workplace computer needed repair, Defendants took several weeks longer to complete the work on her computer than was required for similar repair work completed on her coworkers' computers, including Light's. (Id. 42:21-24.) ("Their computers were fixed, even Hailey's computer was fixed, everyone except Mary. I was the only one in the whole building whose computer wasn't fixed.") Plaintiff further testified that she faced delays in receiving resources from her employer including travel reimbursements and cellular telephone service. (Id. 52:21-22, 54:7-19.)

In each instance, Plaintiff was unable to present evidence of racial animus by Andrea Batts or any other supervisor beyond her own speculation. The Court finds that these unsubstantiated allegations are insufficient to give rise to an inference of discrimination. See, e.g., Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) (finding that "the plaintiff's

8

. an inference [of discrimination]"); Khan v. Abercrombie & Fitch, Inc., No. 01 Civ. 6163, 2003 WL 22149527, at *6 (S.D.N.Y Sept. 17, 2003) (holding that "[plaintiff's] statement that she was discriminated against because she is 'black' is [an] unsupported, conclusory allegation" insufficient to state a prima facie case under Title VII); Sklar v. New York Life Ins. Co., No. 00 Civ. 2254, 2001 WL 984724, at *7 (S.D.N.Y. Aug. 27, 2001) (finding that plaintiff failed to state a prima facie case of discrimination when plaintiff "could not articulate any facts, beyond conclusory allegations, from which to infer that the adverse employment decision was motivated by . . . discrimination"). A plaintiff alleging violation of Title VII must do "more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race." Grillo v. New York City Transit Auth., 291 F.3d 231, 235 (2d Cir. 2002) (internal quotation omitted); see also Simpri v. City of New York, No. 00 Civ. 6712, 2003 WL 23095554, at *4 (S.D.N.Y. Dec. 30, 2003) (noting that "there must be some evidence to support an inference of discrimination other than the fact that plaintiff is a member of a protected class").

In comparing her employment experience with that of a Caucasian coworker, Plaintiff has attempted to establish a disparate treatment claim. To establish a prima facie case for such a claim, Plaintiff must show that she was treated

9

differently than a fellow employee outside her protected class "similarly situated in all material respects," including conduct and performance. See Shumway v. UPS, 118 F.3d 60, 64 (2d Cir. 1997). The similarly situated employee "must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986).

In this case, Plaintiff has established that Hallie Light is an employee outside of the Plaintiff's protected class who was also employed as an ECEC under the supervision of Andrea Batts. However, Plaintiff has failed to show that Light engaged in the same behavior that led to Plaintiff's termination, including failing to complete assigned administrative tasks. Thus, Plaintiff has failed to identify Light as a "similarly situated" employee to establish her disparate treatment claim.

### B. Age Discrimination

Plaintiff also alleges that Defendants discriminated against her because of her age. (See Compl. 1.) Plaintiff's primary evidence of age discrimination again rested on comparisons of workload and treatment with that of Hallie Light, a coworker under the age of 40. (Pl. R. Mem. 2)("To show how this was associated to the charges that I brought against the defendants are Ms Hallie Light was White and younger female and

10

Case 1:07-cv-02836-BSJ-RLE   Document 47   Filed 10/19/09   Page 11 of 19

I was a Black and older female.") However, Plaintiff does not offer any evidence that any actions by Defendants were motivated by Plaintiff's age. Nor, as previously discussed, does she demonstrate sufficient evidence for a disparate treatment claim.

Accordingly, the Court finds that Plaintiff's conclusory allegations of age discrimination fail to give rise to the inference of discrimination required to state a prima facie case under the ADEA. Plaintiff must provide more evidence than merely her age and unsubstantiated allegations against Defendants to survive summary judgment on this count. <u>See, e.g.</u>, <u>Sklar</u>, 2001 WL 984724, at *5 (finding that the mere fact of plaintiff's age does not raise an inference of discrimination).

### C. Defendants' Legitimate Non-Discriminatory Reason for Plaintiff's Termination

Even assuming that Plaintiff could make out a prima facie case of racial and/or age discrimination, her claims would still fail. Defendants have articulated a legitimate, non-discriminatory reason for terminating Plaintiff: her inability to fulfill administrative tasks despite multiple warnings. Because Plaintiff has not offered any evidence to show that Defendants' stated reason for terminating her employment is a mere pretext for discrimination, Plaintiff cannot satisfy her "ultimate burden of persuading the trier of fact that the

11

defendant intentionally discriminated against the plaintiff." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation omitted); see also Weinstock, 224 F.3d at 42 (discussing the evidence required to prove pretext).

Defendants contend that Plaintiff was terminated from her position because "Plaintiff consistently failed to meet the requirements of her position, as reflected in the numerous memorandums sent to Plaintiff." (Def. Mem. 5.) Plaintiff counters that these memorandums "showed the extreme effort (Ms. Batts) tried to develop a paper trail because there were no other alternative, reason, or cause for her to write (Plaintiff) up." (Pl. R. Mem. 22.) However, Plaintiff's vague general denial is insufficient and she presents no additional evidence that the memorandums issued were merely a pretext for discrimination.

Plaintiff's only explanation for her failure to complete assigned administrative tasks was a defective computer that she alleges Defendants were slow to repair. In a December 5, 2005 e-mail, Plaintiff states that her computer "has been out of working condition every [sic] since the beginning of November 2005 and I have not been able to input any work into my computer for the entire month. . . . As of this date my computer is now working and I can enter my work." (Pl.'s R. Mem. Ex. P.) Following this computer repair, Plaintiff had more than two

12

months to update her computer records. She did not. Defendants issued four memorandum instructing Plaintiff to complete these administrative tasks prior to her termination on February 21, 2006.

Absent evidence of discriminatory pretext, these memorandums provide a sufficient non-discriminatory reason for Plaintiff's termination. See McDuffie v. Eli Lilly & Co., 2009 U.S. Dist. LEXIS 30332, 16-17 (S.D.N.Y. Mar. 31, 2009) (finding that multiple warnings regarding failure to complete administrative tasks were sufficient to defeat a claim of discriminatory pretext); see also Antonmarchi v. Consol. Edison Co. of N.Y., Inc., 2008 U.S. Dist. LEXIS 75458, 48-49 (S.D.N.Y. Sept. 29, 2008) (granting summary judgment when Plaintiff "failed to proffer enough evidence for a rational fact finder to find that either of the written warnings was an act of retaliation or discrimination").

Because Defendants have offered a legitimate, non-discriminatory reason for terminating Plaintiff's employment with DOHMH, and Plaintiff has not shown that the articulated non-discriminatory reason is merely a pretext for discrimination, Plaintiff's discrimination claims under both Title VII and the ADEA are DISMISSED.[2]

---

[2] Additionally, Plaintiff names Director of State Day Care Programs Kathleen Nolan as a defendant to this suit. However, Plaintiff testified at her deposition that Nolan did not discriminate against her based on race or age.

13

## II.  Plaintiff's Hostile Work Environment Claim

Plaintiff also claims that Defendants' actions created a hostile work environment at DOHMH in violation of federal law. (Pl. R. Mem. 2-3) ("I am here to show, expose, and prove that Ms Batts and the other defendants have proven and demonstrated a hostile work environment and actions that clearly reveal Acts of double standards; discrimina[tion]; racism. . ."). Defendants counter that "Plaintiff cannot establish that the alleged conduct was sufficiently severe or pervasive; and Plaintiff cannot attribute the alleged hostile work environment to discriminatory animus." (Def. Mem. 8). The Court agrees.

To state a hostile work environment claim, a plaintiff must show that the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). Plaintiff must also show that a "specific basis exists for imputing the conduct that created the hostile environment to the employer." Briones v. Runyon, 101 F.3d 287, 291 (2d Cir. 1996).

---

See Walker-Diallo Decl., Exhibit B at 81:11-83:13.  Similarly, Plaintiff claims that DCAS discriminated against her in their evaluation of her experience and credentials.  Plaintiff then testified at her deposition that DCAS did not discriminate against her based on race or age.  See Id. at 86:1-7.  In light of this testimony, all claims against Kathleen Nolan and DCAS are DISMISSED.

14

Plaintiff claims that she was given additional work responsibilities and was not given all necessary resources to complete her job functions.  Even if taken as true, Plaintiff does not provide any evidence of racial animus or an environment of "intimidation, ridicule, and insult" necessary to maintain a hostile work environment claim.  Absent such evidence, Plaintiff cannot maintain a claim for hostile work environment.  <u>Alfano v. Costello</u>, 294 F.3d 365, 377 (2d Cir. 2002) ("It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals").

### III. Plaintiff's State and City Law Claims

Plaintiff's remaining claims for employment discrimination arise under New York State and City Human Rights Law.  Pursuant to 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over state law claims that are so related to a party's federal claims that "they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Thus, the exercise of supplemental jurisdiction is appropriate where "the facts underlying the federal and state claims substantially overlap[] . . . or where presentation of the federal claim necessarily [brings] the facts underlying the state claim before the court." <u>Lyndonville Sav. Bank & Trust Co. v. Lussier</u>, 211 F.3d 697, 704

(2d Cir. 2000). Conversely, supplemental jurisdiction is lacking "when the federal and state claims rest on essentially unrelated facts." Id.

When deciding whether to exercise supplemental jurisdiction, courts should consider the values of judicial "economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Even if all federal claims have been dismissed, a court may retain supplemental jurisdiction over pendant state claims if "[d]eclining jurisdiction over the state-law claims . . . further[s] neither fairness nor judicial efficiency, nor [do] those causes of action require the district court to resolve any novel or unsettled issues of state law." Mauro v. S. New England Telecomm., 208 F.3d 384, 388 (2d Cir. 2000).

In the instant case, Plaintiff's state and municipal law claims "derive from a common nucleus of operative fact" as her federal law claims. Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004). Therefore, the Court exercises supplemental jurisdiction over the NYSHRL and NYCHRL claims.

### A. New York State Law Claims

Plaintiff's racial discrimination claims under the NYSHRL are subject to the same standard of proof as claims under Title VII. See Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997)

16

("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."); Cretella v. Liriano, 2009 WL 1730993 at *16 n.13 (S.D.N.Y. June 17, 2009). Likewise, "age discrimination suits brought under the [NYSHRL] . . . are subject to the same analysis as claims brought under the ADEA." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

As described above, Plaintiff has failed to make out a prima facie case of race or age discrimination under Title VII or the ADEA because she cannot demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination. Because Plaintiff's state law claims of race and age discrimination are evaluated according to the same standard as his Title VII and ADEA claims, and the Title VII and ADEA claims have been found deficient, these state claims cannot survive summary judgment. Accordingly, Plaintiff's claims under the NYSHRL are DISMISSED.

### B.   New York City Law Claims

The NYCHRL, like Title VII, prohibits employment discrimination on the basis of race or age. However, the municipal law "explicitly requires an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language. The

17

independent analysis must be targeted to understanding and fulfilling . . . the City HRL's 'uniquely broad and remedial' purposes, which go beyond those of counterpart State or federal civil rights laws." Williams v. New York City Housing Auth., 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009); see also Loeffler v. Staten Island Univ. Hosp., 2009 U.S. App. LEXIS 22015 (2d Cir. N.Y. Oct. 6, 2009) ("There is now a one-way ratchet: Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall.")

Accordingly, the Court construes the NYCHRL claims independently from Plaintiff's state and federal claims.  Having reviewed the record separately with respect to Plaintiff's municipal claims while keeping in mind the New York City law's "uniquely broad and remedial" purposes, the Court concludes that Plaintiff has failed to demonstrate any genuine issue of material fact as to whether any Defendant discriminated against Plaintiff because of her race or age.  While Defendants have come forward with a concrete justification for Plaintiff's termination, Plaintiff offers nothing more than conclusory allegations and speculation, which fail to support any inference of discriminatory or retaliatory conduct.  See, e.g., Williams,

872 N.Y.S.2d at 41 ("[S]ummary judgment will still be available where [employers] can prove that the alleged discriminatory conduct in question does not represent a 'borderline' situation but one that could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences."). Therefore, to the extent the NYCHRL is more liberal than its state or federal counterparts in permitting a plaintiff to recover based on claims of discrimination, Plaintiff has still failed to frame any genuine issue of fact as to discrimination, and Plaintiff's municipal claims are DISMISSED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED. Because all claims have been dismissed, the Clerk of the Court is directed to close the case.

**SO ORDERED:**

_____
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         October 19, 2009